UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMY M.,

              Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

CASE NO. 3:25-CV-5979-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's denial of her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB").[1] The Court concludes that the Administrative Law Judge ("ALJ") erred when he failed to properly consider the medical opinion evidence. Had the ALJ properly considered the medical opinions, the residual functional capacity ("RFC") might have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless, and this matter is reversed and remanded pursuant to sentence

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned United States Magistrate Judge. *See* Dkt. 2.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 1

four of 42 U.S.C. § 405(g) to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

**I.      Procedural History**

Plaintiff filed her applications for SSI and DIB on April 26, 2022, alleging disability as of March 29, 2021. Administrative Record ("AR") 105, 123. Her claim was denied initially on July 10, 2023, and upon reconsideration on February 14, 2024. AR 141–42, 168, 173. A hearing was held before ALJ David Johnson ("the ALJ") on December 17, 2024, who issued a decision denying Plaintiff's claim on January 17, 2025. AR 19, 36. The Appeals Council denied Plaintiff's request for review on February 28, 2025, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 9. Plaintiff filed a complaint with this Court on November 6, 2025, seeking judicial review of the ALJ's decision. Dkt. 5.

**II.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 2

the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

**III.    Discussion**

Plaintiff argues that the ALJ erred in evaluating: (1) certain medical opinion evidence; (2) Plaintiff's subjective symptom testimony; (3) the lay witness evidence; (4) the vocational evidence; and (5) Plaintiff's RFC. Dkt. 11 at 1.

A.    *Medical Opinion Evidence: Psychological Evaluations*

For applications filed after March 27, 2017, in evaluating medical opinion evidence, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[2] Rather, ALJs must consider every medical opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.* The critical factors in an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1). A medical opinion is more "supportable," and therefore more persuasive, when the sources provide ample relevant "objective medical evidence and supporting explanations" for their medical opinion. *Id.* "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the

---

[2] The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff's application was filed after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 3

claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. § 416.920c(c)(2).

Critically, an ALJ must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

   1.  Dr. Wingate

On May 24, 2022, Terilee Wingate (Dr. Wingate) conducted a psychological/psychiatric evaluation of Plaintiff. AR 651. In the evaluation, Dr. Wingate opined that Plaintiff would have marked limitations in her ability to: (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; (2) maintain appropriate behavior in a work setting; and (3) complete a normal workday and work week without interruptions from psychologically based symptoms. AR 653. Ultimately, Dr. Wingate opined that Plaintiff had a "marked" overall mental impairment severity rating. *Id.*

The ALJ found Dr. Wingate's opinion was "not persuasive" because "the degree of limitation opined was not supported by and was inconsistent with [Plaintiff]'s normal functioning demonstrated on exam testing. AR 32. This included [Plaintiff]'s logical and linear speech, full orientation, normal thought content, normal thought process, normal perception, normal memory, normal concentration, normal abstract thought, normal insight, and normal judgment." *Id.*

In rejecting the opinion of Dr. Wingate, however, the ALJ acknowledged Dr. Wingate's opinion "was partially supported by the exam findings, such as [Plaintiff]'s crying and shaking

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 4

behavior with a dysphoric mood and blunted affect during the exam" but nonetheless concluded the opinion was not supported because "normal functioning [was] demonstrated on exam testing." *Id.*[3] As for consistency, the ALJ found that the opinion was not consistent with overall medical records which, the ALJ contends, show "normal functioning." *Id.*

Despite lengthy record citations claiming that Dr. Wingate's opinion was not consistent with the record because of Plaintiff's "normal" functioning, the Court observes that the majority of the ALJ's citations for his consistency finding are *not* mental health records, but rather, medical records largely related to Plaintiff's eye condition.[4] *Id.* The remaining records that the ALJ contends are "not consistent" with Dr. Wingate's opinion, for instance, Exhibit 4F/9, show that Plaintiff "presented with depressive cognitions throughout session and thought process

---

[3] The Court observes the ALJ, elsewhere in the decision, found that "[e]ven when upset and *displaying outward signs of difficulty* in examinations, [Plaintiff] was able to, nevertheless, function within normal limits, or nearly so, on testing." AR 26 (emphases added). The ALJ, in this finding, seems to undermine his latter supportability finding, acknowledging that Plaintiff *does not necessarily* function "within normal limits" on exam testing because he qualified his own finding of Plaintiff's "normal" functioning with "nearly." *Cf.* AR 26, 32.

[4] In fact, of the forty-one citations, across eleven exhibits, cited by the ALJ, thirty-six of those citations *are not* from mental health appointments. To support his finding that Dr. Wingate's opinion was not supported or consistent, the ALJ cites to: Plaintiff's progress notes for her eye condition demonstrating normal "mood/affect"(Exhibit 1F/7, 12, 18); hospital records for her eye condition showing "alert" mental status, "oriented" mental status, and "normal affect and behavior" when seen for "discomfort in her sinuses, ears, and eyes" (2F/7, 12, 16, 20, 23–24); medical records from "Sound Retina" addressing a "repaired horseshoe tear of retina without detachment" where Plaintiff was "alert and oriented, appropriate mood/affect" (3F/4, 7, 11 and 5F/7, 11, 15, 18); and an ophthalmology chart note that observed "mood/affect is normal" (Exhibit 7F/6, 16). AR 420, 426, 431, 440, 445, 449, 456–57, 487, 490, 494, 536, 540, 544, 547, 614, 626–27, 663, 675, 695. The ALJ's citation to Exhibit 7F/22 is not found in the record. AR 626–27. The ALJ also contends that Dr. Wingate's opinion was not consistent with: Exhibit 11F, which consists of medical records from an instance in 2023 where Plaintiff presented "with blood in the urine along with pain and urgency with urination since last night" but otherwise had "normal" mood and behavior (11F/5, 17); Office Treatment records from "Pacific Cataract + Laser Institute" showing "mood/affect is normal" (12F/4); and progress notes from July 2020 until September 2024, showing normal mood, affect, and behavior, (16F/10, 17, 23, 29, 32, 35–38, 43, 52, 66, 72, 76), AR 663, 675, 695, 826, 828–29, 833, 839, 845, 848, 851–54, 859, 868, 882, 888, except for one instance where Plaintiff had "grossly normal" neurological findings (16F/59). AR 875. It is well-established in this jurisdiction, however, that an ALJ cannot cherry-pick some of a provider's characterizations but, rather, must evaluate a conflict between treatment notes and medical opinions "in context of the overall diagnostic picture the provider draws." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (internal quotations omitted). In making these findings, the ALJ disregarded their context, namely, that Plaintiff was seeking medical treatment for conditions *other than* her mental health impairments when various medical providers made these observations. *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (holding that an ALJ must not "cherry-pick" certain observations without considering their context).

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 5

appeared tangential" and "presented in a guarded manner" which is not inconsistent with Dr. Wingate's opined limitations. AR 32, 506.

Similarly, the ALJ's citation to "6F/47" reveals that Plaintiff "did present as tearful several times throughout the session" and Plaintiff "no longer enjoys going out of the house and cannot work anymore[,] [Plaintiff] does have some coping skills that she applies *when she can but she struggles to get out of bed and participate in life right now* which she says her family does not understand." AR 32, 596 (emphasis added). The ALJ also found that Exhibit "8F/7" was not consistent with Dr. Wingate's opined "marked limitations," but the Court observes that Exhibit 8F/7 indicates that Plaintiff's mood was "anxious and depressed[,]" and her affect was "congruently restricted, non-labile, non-suspicious" which, again, is consistent with Dr. Wingate's opinion of Plaintiff's marked functional limitations. AR 32, 633. Finally, Exhibit "15F/6" indicates that Plaintiff's mood was "euthymic, anxious[,]" she had a "tearful" affect, and that Plaintiff "would greatly benefit from working with a skilled trauma therapist and EMDR[,]" which, once again, is not inconsistent with Dr. Wingate's opined limitations. AR 32, 761.

For these reasons, the Court concludes that the ALJ erred in evaluating Dr. Wingate's medical opinion because the ALJ's supportability and consistency findings are not supported by substantial evidence in the record. *See Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

2.  Dr. Wilkinson

On July 22, 2024, William Wilkinson (Dr. Wilkinson) conducted his own psychological/psychiatric evaluation of Plaintiff. AR 750. At the evaluation, Plaintiff "was having the last of a panic attack . . . [and] any part of the evaluation that related to her little

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 6

brother's having been murdered . . . would trigger anxiety and crying[.]" *Id.* Dr. Wilkinson opined that, since Dr. Wingate's evaluation, Plaintiff had devolved from a "marked" to a "severe" limitation in her ability to maintain appropriate behavior in a work setting, and from a "moderate" to a "marked" limitation in her ability to communicate and perform effectively in a work setting. *Cf.* AR 653, 752. Dr. Wilkinson, like Dr. Wingate, ultimately opined that Plaintiff had a "marked" overall mental impairment severity rating. *Id.*

The ALJ found that Dr. Wilkinson's opinion was "not persuasive" because it "lacks support and is inconsistent with [Dr. Wilkinson's] examination findings." AR 32. As for support, the Court observes that, in considering Dr. Wilkinson's opinion, the ALJ acknowledged that Plaintiff "did exhibit some difficulty during memory and concentration testing . . . [and] [could only] recall one of three objects after 15 minutes" at the examination, which *does* support Dr. Wilkinson's opinion of Plaintiff's functional limitations. AR 32, 750–52. As for consistency, the ALJ relies upon the same evidence as he did in discounting Dr. Wingate's medical opinion, *supra*. AR 32–33.

In this case, two doctors have opined that Plaintiff has marked, if not *severe*, limitations in her ability to work in several mental functioning areas. AR 653, 752. Nonetheless, the ALJ concluded that these doctors' medical opinions were not persuasive, absent substantial evidence to support his conclusion. *See Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). For this reason, the Court concludes that the ALJ also erred in his consideration of Dr. Wilkinson's medical opinion.

Applying the harmless error analysis, the Court concludes that if the ALJ had properly considered Dr. Wingate and Dr. Wilkinson's opinions, the RFC or the ultimate disability

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 7

determination may have changed. For example, the ALJ's Step Three determination that Plaintiff did not have "at least two 'marked' limitations or one 'extreme' limitation" satisfying the Paragraph B Criteria of "[L]istings 12.04, 12.06, 12.11, and 12.15" may have changed if the ALJ had properly considered these medical opinions. AR 23–24. Accordingly, the ALJ's error is not harmless and necessitates reversal. *See Stout*, 454 F.3d at 1055; *Molina*, 674 F.3d at 1115.

        B.     *Remaining Issues*

In light of this disposition, the Court declines to address Plaintiff's remaining arguments, because, on remand, the ALJ must re-evaluate the entire sequential evaluation process, including the medical opinion evidence, Plaintiff's subjective symptom testimony, and the lay witness evidence.

**IV.    Conclusion**

Based on the foregoing reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** for further administrative proceedings, consistent with this order.

Dated this 4th day of June, 2026.

 

David W. Christel
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 8